Curia, per RxchaRdsokt, J.
It is wholly unnecessary to review the many reported decisions of the highest courts of this State, that bear successively upon the question now again brought before the court. This has been already done.
These cases begin with that of Gray vs. Handkinson, in 1792, 1 Bay, 278. This case was followed closely by that of the State vs. Gaillard, 2 Bay, 11; in 1796. Then came the cases of Adams vs. Wylie, 1 N. and McC. 78; Tunno vs. Fludd, 1 McC. 121; and Means vs. Brickell, 2 Hill, 657, in 1835.
These are the leading eases, and all turn upon the principle before the court. In Means vs. Brickell, the preceding cases are carefully considered, and the principle of their adjudication unanimously approved of, adopted and applied, by the late Court of Appeals. I propose therefore merely to add a brief supplement to that review.
In the case of Means vs. Brickell, the. defence consisted in this; that the plaintiff verbally represented to the defendant that there were three hundred acres of woodland within certain limits, which contained but one hundred and twenty acres, and that the boundaries included certain lands, whereas they did not.
The defence was supported by the Court of Appeals upon the verbal representation made by the seller ; although not set forth in the conveyance, but counter to it; and when no fraud or deceit was alleged. This was the very *130 point of the case, for a very able circuit Judge had ruled that a fraudulent representation, and no other, could support the defence.
All the cases are made upon this principle; that in actions at law, upon contracts, as well as in equity, the purchaser of lands may have a discount against the price agreed upon, by reason of any misrepresentation or mistake clearly made by the seller, in reference to the consideration and matter of the purchase, whether such error be in quality or quantity of the land, or whether fraudulent or not.
It may be that this principle of plain justice was first suggested by the civil law; but it is evidently within our discount Act, 4 Stat. 76, which allows the defendant to set up “any account, reckoning, demand, cause, matter or thing,” in order to diminish the demand, and shew the true state or balances of indebtedness between the parties. And for that balance the verdict is to be given, as the truth may turn out, to either party.
This last provision makes the discount a cross • action.
Let me here remark, that I considér this Act as justifying all those early decisions, which are often supposed to have introduced the doctrines of the civil law.
Where an Act permits a discount to be predicated upon “any account, reckoning, demand, cause, matter or thing,” I perceive not how this court can well avoid the rule, that he who demands justice, must first do justice, in the whole-matter or contract which he seeks to enforce.
At all events, those cases have this legislative Act for their justification, in adopting the most enlarged principles of equity and justice, in such defences.
Upon this principle of our discount law, I know of no difference between the purchase of real or personal property, or between sealed or parol evidences of debt. A bill of sale, or deed of conveyance, or any other written agreement, equally indicates the contract of bargain and sale, and binds the parties. But by our discount law, the consideration expressed in the conveyance, and which might always have been questioned in the Court of Equity, is laid open to the consideration of the courts of common law, together *131 with the power to decree the true balance and enforce its payment.
The case before us comes within the principle so frequently recognized, with more than common clearness. .By the deed of conveyance alone, the land was sold by certain metes and bounds, supposed to contain 85 acres. The number of acres, it may be conceded, is but a part of the description of the land, and the seller does not warrant the quantity, if the metes and bounds are correct; and in this case they were correct. But the true quantity was found to be 73 acres instead of 85. The evidence, extrinsic of the conveyance, shews that the land was sold for $7 per acre, and that the plaintiff represented it to contain 85 acres. Thus the consideration failed by 12 acres, and the notes were given for too much by $84. This is the sum allowed by the jury in discount, and the verdict is justified by the principle of law just laid down. Upon this finding, and in a Court of Equity, who could doubt 1 But in such a case, law and equity are the same.
It has been sometimes supposed that the rule is inconsistent, because if the purchaser had paid the price he would have to sue upon the breach of the warranty in the conveyance, and would of course fail, as no breach would appear from the metes and bounds .set forth, (see Means vs. Brickell.) But might he not sue in the action of as-sumpsit, founded on the mere verbal representation of the number of acres, and the money he had paid, and recover for the deficiency of the 12 acres ? The converse is at least not clear.
If no note or bond had been given, the seller must have sued in assumpsit for the price, and the purchaser might set off the failure of the consideration.
In all these cases the conveyance would constitute but a part of the evidence, and not an estoppel to other evidence, as it would if sued upon in the action of covenant, for a breach of its express warranty.
Again, it has been asked, why is it, if the land is found to contain more than is represented, the purchaser gets it, while, if less, the seller must answer for the deficiency 1 But the answer is satisfactory; such is the contract. But *132 farther, by the deed of conveyance all the land within the metes and bounds is sold, be it more or less, and the sup-pqsed quantity in acres is but a part of the description in order to assist in identifying the land. Like the date to a deed, it is not essential; and is in most cases found entirely different from the number of acres set forth in the conveyance.
It is only when the seller undertakes to represent a named quantity to be contained within the metes and bounds, that the purchaser can require the deficiency to be paid for, by deducting it from the price founded upon and measured by such representation. In such cases alone it becomes a sale for the exact acres represented, and the seller must make the deficiency good to the purchaser. If the sale were of a gang of hogs running in the woods, number unknown, but represented by the vendor to be full 50 head, if they turned out to be but 15, we would easily perceive the propriety of the rule. And beyond a doubt, both in .grants and conveyances of lands, by metes and bounds, the contents in acres is often as uncertain.
There is another objection often urged, that such de-fence goes to contradict the deed, which ought to outweigh all other evidence, and bind the parties to it. This is true. But let it be observed, that the number of acres supposed to be within the metes and bounds, and so expressed, is not essential, is usually uncertain, and requires exact measurement. And yet the quantity of acres is often of great moment in the purchase of lands. And where we perceive that the same rule has been settled in Courts of Equity, and really consists in a question of fact proper for a jury, it is plain that for the common convenience and economy of litigants, it ought to be entertained in the courts of law. But under any view, after such a series of uniform decisions — and made with great unanimity — the question ought to be at rest.
The motion is therefore dismissed.
O’Neall, Evans, Wardlaw and FROST, JJ. concurred.